UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROGER L. MAXWELL,

    Plaintiff,

v.

Case No. 13-10040
HON. TERRENCE G. BERG

POSTMASTER GENERAL OF THE
UNITED STATES,

    Defendant.
_____/

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION TO DISMISS (Dkt. 14)**

Plaintiff Roger Maxwell is suing his former employer, the Postmaster General of the United States ("the Postmaster"), for gender discrimination and retaliation in violation of Title VII. The case is now before the Court on Defendant's Motion to Dismiss (Dkt. 14). The parties have fully briefed the motion and the Court heard oral argument on November 13, 2013.

For the reasons stated below, Defendant's Motion to Dismiss is GRANTED IN PART and DENIED IN PART.

## I.    FACTUAL BACKGROUND

Plaintiff Roger Maxwell was employed by the United States Postal Service for over 24 years. (Dkt. 12, Am. Compl. ¶ 8). In 2004, while working as Manager of Customer Service ("MCS") at the Post Office in Bloomfield Hills, Michigan, Plaintiff

filed an internal "EEO charge."[1] (*Id*. ¶¶ 9-10). During the EEO proceedings, the Postmaster was represented by Human Resources Manager (and non-party) Frances Chiodini. (*Id*. ¶ 10).

Sometime after the EEO proceedings ended, Plaintiff claims that Chiodini "assumed an undisguised attitude of hostility towards Plaintiff and undertook, over time, consistent adverse actions against Plaintiff in his employment." (*Id*. ¶ 11). Plaintiff further alleges that there was no legitimate reason for any of Chiodini's adverse actions and that the only reasonable inference is that Chiodini was retaliating against Plaintiff for his filing of the EEO claim. (*Id*. ¶ 12).

Plaintiff also alleges that Chiodini took adverse actions against him because he is male. (*Id*. ¶ 13). Specifically, Plaintiff alleges that as a result of Chiodini's conduct:

1) Plaintiff was not included in a 2009 Reduction in Force ("RIF"),[2] depriving him of a promotion and pay raise (*Id*. ¶ 14);

2) Plaintiff was wrongfully rejected from consideration for a promotion, which was subsequently awarded to a less-qualified female applicant (*Id*. ¶¶ 15-16);

3) Plaintiff's position was not upgraded from grade EAS-20 to grade EAS-21; however, a similarly situated female was upgraded (*Id*. ¶¶ 17, 21);

4) Plaintiff was not included in a 2010 RIF, again depriving him of a promotion and pay raise (*Id*. ¶ 18); and

---

[1] An "EEO charge" is a charge that alleges some violation of the Equal Employment Opportunity (EEO) Act. The complaint is silent as to (1) what caused Plaintiff to file the 2004 EEO charge, and (2) the result of the EEO proceedings.

[2] During oral argument, in response to a question from the Court, Plaintiff's counsel explained that because Plaintiff is a disabled veteran, he would have had certain "rights" in the event his position was included in a RIF. Although the exact nature of these "rights" is unclear, counsel suggested that Plaintiff would have either been automatically advanced to a new grade or allowed to bid for a new, higher-level position. It is because of the loss of these advancement "rights" that Plaintiff claims that his exclusion from an RIF is tantamount to the denial of a promotion.

    5) Instead of receiving an upgrade, Plaintiff was involuntarily transferred to a position in St. Clair, Michigan, effective March 12, 2011 (*Id.* ¶18).

In addition, Plaintiff generally alleges that Chiodini, at other times in March and April of 2011, promoted or favored females and/or persons who were similarly situated to Plaintiff but had not filed EEO charges against the United States Postal Service. (*Id.* ¶ 22).[3]

On April 26, 2011, Plaintiff made initial contact with an EEO counselor. (Dkt. 14, Ex. A).

On January 4, 2013, Plaintiff filed the initial Complaint in this action (Dkt. 1). On July 30, 2013, in response to a prior motion to dismiss (Dkt. 7), Plaintiff filed an Amended Complaint (Dkt. 12).

Defendant now seeks to dismiss the Amended Complaint, arguing Plaintiff's claims should be barred because: (1) with the exception of the claims pertaining to his transfer, Plaintiff failed to timely comply with certain administrative requirements; and (2) the transfer did not constitute "an adverse employment action" of the kind that could support a discrimination or retaliation claim.

## II.    LEGAL STANDARD

A Rule 12(b)(6) motion tests whether a legally sufficient claim has been pleaded in a complaint, and provides for dismissal when a plaintiff fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as

---

[3] Without specifying the job position(s) for which he was interviewing, Plaintiff also claims that Chiodini insisted that an interviewer ask Plaintiff illegal questions, and that Plaintiff would have gotten the job if he had given certain answers to the illegal questions. (*Id.* ¶ 19).

true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A claim is facially plausible when a plaintiff pleads factual content that permits a court to reasonably infer that the defendant is liable for the alleged misconduct. *Id.* (citing *Twombly*, 550 U.S. at 556). When assessing whether a plaintiff has set forth a "plausible" claim, the district court must accept all of the complaint's factual allegations as true. *See Ziegler v IBP Hog Mkt., Inc.*, 249 F.3d 509, 512 (6th Cir. 2001). "Mere conclusions," however, "are not entitled to the assumption of truth. While legal conclusions can provide the complaint's framework, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 664. A plaintiff must provide "more than labels and conclusions," or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 556. Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

In ruling on a motion to dismiss, the Court may consider the complaint as well as (1) documents that are referenced in the plaintiff's complaint or that are central to plaintiff's claims, (2) matters of which a court may take judicial notice, and (3) documents that are a matter of public record. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *see also Greenberg v. Life Ins. Co. of Virginia*, 177 F.3d 507, 514 (6th Cir. 1999) (finding that documents attached to a motion to dismiss that are referred to in the complaint and central to the claim are deemed to form a part of the pleadings).

### III.   ANALYSIS

A.   **Compliance with Administrative Procedures**

Defendant contends that Plaintiff's claims based on conduct that occurred prior to March 12, 2011 are untimely and must be dismissed.[4]  After carefully reviewing the pleadings, and considering the relevant authorities, the Court finds that Defendant's argument is well-taken.

Congress has mandated that a Title VII complainant must seek relief through an established administrative mechanism before filing suit in federal court, and that the administrative process must be fully exhausted before the court can act.  *See Brown v. City of Cleveland*, 294 F. App'x 226, 233 (6th Cir. 2008) (holding that the timely filing of an administrative charge of discrimination is a "prerequisite" to bringing suit); *see also Zipes v. Trans World Airlines*, 455 U.S. 385, 393-98 (1982).  Further, the failure to timely seek EEO counseling is, by itself, grounds for dismissal of a plaintiff's discrimination claims.  *Hunter v. Secretary of U.S. Army*, 565 F.3d 986, 993 (6th Cir. 2009) (citing *Benford v. Frank*, 943 F.2d 609, 612 (6th Cir. 1991)).  Here, Plaintiff first made contact with an EEO counselor on April 25, 2011 (Dkt. 14, Ex. A).  Thus, any of Plaintiff's claims that are based on conduct occurring prior to March 12, 2011 (45 days before Plaintiff's contact with the EEO counselor), appear to be time-barred and subject to dismissal.  *Hunter*, 565 F.3d at 993; *Benford*, 943 F.2d at 612.

---

[4] Pursuant to 29 C.F.R. § 1614.105(a)(1), an aggrieved federal employee must initiate contact with an EEO counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action in order to facilitate informal resolution of the dispute.

5

In response, Plaintiff seeks to avoid the requirements of 29 C.F.R. § 1614.105(a)(1) by relying upon the "continuing violations" doctrine, and requests that the Court deny Defendant's motion as premature and permit discovery in order to allow Plaintiff to explore the nature and degree of the relatedness of Chiodini's actions. (Dkt. 17, Pl. Resp. 6). After careful consideration, the Court concludes that Plaintiff's position on the continuing violations doctrine is untenable.

The Supreme Court has previously held that the continuing violations doctrine does not apply to discrete, serial violations. *See National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002) (reversing Ninth Circuit's application of continuing violations doctrine to "serial violations" and holding doctrine does not apply to claims arising out of discrete acts of discrimination). Subsequent to *Morgan*, the Sixth Circuit has also considered the continuing violations doctrine and found, outside the context of hostile work environment cases, that it only applies where the challenged acts are part of a "longstanding and demonstrable policy of discrimination." *Sharpe v. Cureton*, 319 F.3d 259, 268 (6th Cir. 2003) (noting *Morgan* overturned prior Sixth Circuit case law allowing application of continuing violations doctrine to serial violations); *see also Austion v. City of Clarksville*, 2007 WL 2193597 (6th Cir. 2007). Moreover, in *Hunter v. Secretary of the United States Army*, 565 F.3d 986 (6th Cir. 2009), the Sixth Circuit affirmed a district court's order dismissing the plaintiff's claims as time-barred, specifically rejecting the argument that the claims of failure to promote and failure

6

to train should have been considered part of a longstanding pattern and practice of discrimination. 565 F.3d at 993-94.

In this case, Plaintiff clearly alleges several discrete acts of discrimination directed toward Plaintiff (Dkt. 12, Am. Compl. ¶¶ 12-18). However, the Amended Complaint does not allege any facts suggesting the existence of a "longstanding and demonstrable policy of discrimination" toward male employees. Nor does the Amended Complaint allege the existence of a hostile work environment. Plaintiff has cited no case law in support of his argument that the continuing violation doctrine should nevertheless apply in these circumstances. Under the governing Supreme Court and Sixth Circuit precedent, the continuing violations doctrine's tolling of the limitations period does not apply where the plaintiff alleges a series of discrete discriminatory actions, as he does here. Accordingly, any claims based upon conduct occurring prior to March 12, 2011 are time-barred, and, to the extent that Defendant's motion seeks dismissal of Plaintiff's now time-barred claims, that motion is GRANTED IN PART.

B.   **Pleading of Adverse Employment Action**

The Postmaster's second argument is that Plaintiff's transfer on March 12, 2011, although timely raised, does not constitute an "adverse employment action," of the kind that is necessary for establishing a *prima facie* claim of sex discrimination under the standards set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[5] Defendant further asserts that such an adverse employment

---

[5] An adverse employment action is merely one requirement of a *prima facie* case of employment discrimination; under *McDonnell Douglas*, a plaintiff bears the initial burden of establishing that

7

action is also a *prima facie* element of a proper retaliation claim. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 792 (6th Cir. 2000).

The Supreme Court and the Sixth Circuit have both made it clear that a Title VII claim must be supported by a "tangible employment action," that is, an action by the employer that "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *White v. Baxter Healthcare Corp.*, 533 F.3d 381 (6th Cir. 2008), *citing Burlington Industries v. Ellerth*, 524 U.S. 742, 761 (1998). To be a "significant change in employment status," the adverse action "must be more disruptive than a mere inconvenience or an alteration of job responsibilities." *Ford v. General Motors Corp.*, 305 F.3d 545, 553 (6th Cir. 2002). Defendant contends that Plaintiff's transfer was simply an inconvenience, not an adverse employment action, because it did not involve a change in title, compensation, responsibility or working conditions. *See Russell v. Drabik*, 24 F. App'x 408, 413 (6th Cir. 2001) (holding that in order to constitute a "materially adverse change" in the terms of plaintiff's employment, a transfer must include either diminished responsibilities, a demotion evidenced by a change in salary, title, or benefits, or other indices unique to the particular situation) (citing *Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 885-86 (6th Cir. 1996)).

---

they: (1) are a member of a protected group, (2) suffered an adverse employment action, (3) were qualified for the position, and (4) were replaced by a person outside of the protected class or were treated differently from similarly situated members of the unprotected class. *See Michael v. Caterpillar Financial Services Corp.*, 496 F.3d 584, 593 (6th Cir. 2007).

In response to Defendant's argument that a mere transfer cannot constitute an adverse employment action, Plaintiff asserts that his transfer to the St. Clair office was, in fact, more than merely a transfer. In the Amended Complaint, Plaintiff makes the assertion that his transfer was *in lieu of a promotion*. (Dkt. 12, Am. Compl. ¶ 18).[6]

The Sixth Circuit has repeatedly held that "a materially adverse change [in employment status] might be indicated by a termination of employment, a demotion evidenced by a *decrease in wage or salary, … or other indices that might be unique to a particular situation*." *Ford*, 305 F.3d at 553 (emphasis added); *accord Russell*, 24 F. App'x at 413. Similarly, in *Clay v. UPS*, 501 F.3d 695 (6th Cir. 2007), the Sixth Circuit found that an employer's allegedly intentional delay in providing an employee with a certain type of training which then prevented an employee from receiving increased pay constituted an adverse employment action. Plaintiff's briefing cites *Ford* and *Clay* in support of his position that, in this case, the transfer was an adverse employment action. Further, during oral argument, Plaintiff compared the decisions leading to Plaintiff's transfer to St. Clair—which purportedly deprived him of an automatic upgrade and pay increase—to the decision to delay the plaintiff's "triples training" in the *Clay* case—which deprived that plaintiff of the ability to make "triples runs," at a higher rate of pay. In light of the Sixth Circuit's holdings in *Ford*, 305 F.3d at 553, and *Russell*, 24 F. App'x at

---

[6] Although Plaintiff does not address this in his briefing, the Court notes that the Amended Complaint also states, "In late March, 2011 or April, 2011 a similarly situated female named Ms. Ernst, at the time an EAS-20 Branch Manager in Troy, was upgraded by Chiodini despite Ms. Ernst's position being eliminated and Ms. Ernst being allowed to go to her position of choice which was at the higher level." (Dkt. 12, Am. Compl. ¶ 21).

9

413, both stating that an adverse employment action may be shown by "other indices that might be unique to a particular situation," Plaintiff's analogy to *Clay* is persuasive.

In reply, Defendant asserts that Plaintiff is attempting to "bootstrap" a time-barred claim of adverse action to his timely—but not adverse—transfer. Defendant further argues that "Plaintiff's subjective view that there is a connection [between the claims] is not controlling." *Davis v. Town of Lake Park*, 245 F.3d 1232, 1239 (11th Cir. 2001). First, as acknowledged by another court in this district, *Davis* dealt with a written counseling memorandum that the employee "did not suffer any tangible consequence from," *Runion v. Bank One Corp.*, No. 05-71520, 2006 WL 931932 at *6 (E.D. Mich. Apr. 10, 2006) (Edmunds, J.), as opposed to a transfer or other action in lieu of a promotion. Second, in the absence of any case law from the Sixth Circuit, *Davis* is not binding upon this Court. The question here is not whether Plaintiff had a subjective belief that certain employment decisions were connected, the question is whether the Amended Complaint as a whole states a plausible claim that the decision to transfer Plaintiff was an adverse employment action in the context in which it was made.

Although Defendant argues that the decisions made in December of 2010 should be divorced from the March 2011 transfer, such a view ignores the unique circumstances underlying Plaintiff's complaint: because of Plaintiff's alleged advancement rights, Plaintiff maintains that Chiodini's decision to re-evaluate the staffing needs of the Bloomfield Hills office, rather than to allow Plaintiff's position

10

to be included in the RIF, operated to deprive Plaintiff of a promotion in Bloomfield Hills and resulted in his subsequent transfer to St. Clair. Viewing the allegations in the light most favorable to Plaintiff, the Amended Complaint is not subject to dismissal for failure to plead an adverse employment action. Because Plaintiff made initial contact with an EEOC counselor less than 45 days after the effective date of his transfer, any claims based upon this conduct are timely. Accordingly, insofar as Defendant's motion seeks to dismiss claims arising from Plaintiff's transfer to St. Clair, that motion is DENIED IN PART.

## IV. CONCLUSION

For the reasons set forth above, **IT IS ORDERED** that Defendant's motion to dismiss the Amended Complaint (Dkt. 14) is **GRANTED IN PART** and **DENIED IN PART**: All claims in the Amended Complaint arising from conduct that occurred prior to March 12, 2011, are dismissed as time-barred; however, Plaintiff shall be allowed to proceed on the claims related to his transfer to the St. Clair office.

Therefore, to the extent that they are based upon the transfer to St. Clair, both counts of Plaintiff's Amended Complaint withstand Defendant's Motion to Dismiss.

**SO ORDERED**.

Dated: December 10, 2013                     s/Terrence G. Berg
                                             TERRENCE G. BERG
                                             UNITED STATES DISTRICT JUDGE

## Certificate of Service

    I hereby certify that this Order was electronically submitted on December 10, 2013, using the CM/ECF system, which will send notification to the parties.

                                                s/A. Chubb
                                                Case Manager